UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MOISES ROSADO, II,

    Plaintiff,

v.                                                                Case No: 8:22-cv-2067-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**<u>ORDER</u>**

Plaintiff Moises Rosado, II, seeks judicial review of the denial of his claims for disability insurance benefits and supplemental security income. As the Administrative Law Judge's (ALJ) decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

**BACKGROUND**

**A.    Procedural Background**

Plaintiff filed applications for disability insurance benefits and supplemental security income on June 3, 2020. (Tr. 100–01, 308–14.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 167–80, 184–209.) Plaintiff then requested an administrative hearing. (Tr. 210–11.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 47–65.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not

disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 23–46.) Subsequently, Plaintiff requested review from the Appeals Council. (Tr. 18–19.) The Appeals Council affirmed the ALJ's decision in all respects. (Tr. 1–11.) Plaintiff then timely filed a complaint with this court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.  Factual Background and the ALJ's Decision

Plaintiff, who was born in 1967, claimed disability beginning on June 30, 2015. (Tr. 66, 83.) Plaintiff has a high school education and past relevant work experience as a combat rifle crewmember, logistics and supply worker, recruiter, and security guard. (Tr. 7, 39–40.) Plaintiff alleged disability due to pulmonary edema, osteoarthritis, post-traumatic stress disorder, sciatica, cervical strain, hearing loss, tinnitus, obstructive sleep apnea, radiculopathy, anxiety, depression, reflux, and inflammation of the intestines. (Tr. 67, 84.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since June 30, 2015, the alleged onset date. (Tr. 28.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative joint disease, shoulder and knees; degenerative disc disease, lumbar and cervical spine; pulmonary edema; anxiety; depression; and post-traumatic stress disorder. (Tr. 29.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 29.) The ALJ then

concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work with the following exceptions:

> [T]he claimant is never able to climb ladders, ropes, or scaffolds, is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and is able to frequently reach in all directions, including overhead, with the right upper extremity. The claimant should avoid concentrated exposure to extreme cold, extreme heat, and hazards. The claimant is able to understand, remember, carry out, and perform simple routine tasks and instructions with reasoning level 1 or 2 and occasional interaction with the public, coworkers, and supervisors.

(Tr. 31.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 32.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 39.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as advertising material distributor, checker, and collator operator. (Tr. 40, 63.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 41.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national

economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal

standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to consider the medical opinion evidence of Plaintiff's psychologist, Dr. Carrie Springer, Ph.D.; and (2) the ALJ failed to properly assess Plaintiff's shoulder impairment. (Dkt. 15.) For the reasons that follow, neither of these contentions warrants reversal.

### A. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in failing to properly consider the medical opinion evidence of his treating psychologist, Carrie Springer, Ph.D. (Dkt. 15 at 4–14.) Specifically, Plaintiff asserts that Dr. Springer's opinion shows that Plaintiff is more limited than RFC assessed by the ALJ, and that Dr. Springer's opinions are consistent with and supported by the evidence of record. (*Id.*) Upon consideration, the court finds that the ALJ properly considered Dr. Springer's medical opinion evidence and the decision is supported by substantial evidence.

Prior to March 27, 2017, an ALJ was required to assign greater weight to the opinions of treating physicians. This rule, referred to as the "treating physician rule" required the ALJ to assign controlling weight to the opinion of a treating physician if the opinion was well-supported and not inconsistent with other evidence in the record. If an ALJ assigned less than controlling weight to a treating physician, the ALJ was

required to provide good cause for doing so.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011).

However, the new SSA regulations, published on January 18, 2017, and effective on March 27, 2017, apply to this case and eliminate the treating physician rule.  20 C.F.R. §§ 404.1520c, 416.920c; *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022) (affirming that new regulations eliminated treating physician rule and apply to applications filed after effective date).  In revising the regulations to eliminate the treating physician rule, the SSA explained that "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision . . . these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

"Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, No. 2:18-cv-2379-MGL-MGB, 2020 WL 376995, at *4 n.2 (D.S.C. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a), (c)(1)–(2)).  While there are several factors the ALJ must consider, "[t]he most important factors" are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ must therefore analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at * 3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (Apr. 21, 2021).

The new regulations also changed the articulation standards for ALJs in assessing medical source opinions. First, an ALJ need not assign evidentiary weight to the medical opinions in the record. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Tucker v. Saul*, No. 4:19-cv-759-RDP, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). Second, because controlling weight is no longer required, the ALJ no longer needs to "give good reason" for the weight given to the treating source's medical opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Third, while the ALJ must explain how he or she considered the supportability and

consistency factors for a medical source opinion, the ALJ need not explain how it considered any other factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see Bell v. Comm'r of Soc. Sec.*, No. 6:20-cv-1923-DCI, 2021 WL 5163222, at *2 (M.D. Fla. Nov. 5, 2021) ("'Courts have found that '[o]ther than articulating [her] consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how [she] considered any other factor in determining persuasiveness.'") (quoting *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019)); *Delaney v. Comm'r of Soc. Sec.*, No. 6:20-cv-2398-DCI, 2022 WL 61178, at *2 (M.D. Fla. Jan. 6, 2022) (noting that the ALJ may, but is not required to, explain how he or she considered the remaining factors besides supportability and consistency).

Dr. Springer treated Plaintiff from November 2015 until May 2022.  (Tr. 1617–80, 13–17.)  In a January 1, 2022 Mental Impairment Questionnaire, Dr. Springer described Plaintiff's prognosis as "fair."  (Tr. 1674.)  She noted that Plaintiff had undergone "trauma resolution treatment" and that his "symptoms [had] abated but there [had] been periodic flare ups."  (Tr. 1674.)  Dr. Springer concluded that Plaintiff met all criteria for PTSD, that he could not maintain employment because his symptoms would worsen, and that he had some social impairment.  (Tr. 1674.)  In the decision, the ALJ stated that he was "generally unpersuaded" by Dr. Springer's conclusions because they were "not well supported internally and not consistent with the other evidence of record."  (Tr. 37.)  The ALJ found that the "extreme nature" of the assessed limitations was "significantly unsupported by Dr. Springer's own

treatment notes confirming that the claimant routinely demonstrated unremarkable mental status other than mood fluctuations throughout treatment between late 2015 and 2022[.]" (Tr. 37.) The ALJ noted that Dr. Springer's conclusions were also inconsistent with the other evidence of record, including primary care notes and Plaintiff's "reported ability to perform a robust variety of activities of daily living and hobbies, such as volunteer with the Shriner's, travel out of the country several times, and live alone and care for himself." (Tr. 37–38.) Ultimately, the ALJ concluded that Plaintiff did have some limitations, but was generally unpersuaded by Dr. Springer's statements "due to the extremeness of the opined limitations[.]" (Tr. 38.)

Plaintiff first argues that, if properly credited, Dr. Springer's opinions establish that Plaintiff is far more limited than the ALJ assessed in his RFC. (Dkt. 15 at 8–9.) Specifically, Plaintiff argues that Dr. Springer opined that Plaintiff would be absent from work more than four days a month, and the VE explained that two absences per month would preclude full-time employment. (*Id.* at 8.) Plaintiff also argues that Dr. Springer's opinions about Plaintiff's limitations in the work environment also preclude "sustained competitive employment[.]" (*Id.* at 8–9.) Defendant responds that the ALJ's reasoning for finding that Dr. Springer's opinions were generally unpersuasive is supported by substantial evidence, and that the ALJ properly explained his reasoning for that conclusion. (Dkt. 18 at 5–11.)

Upon consideration, the ALJ's decision adequately considers the evidence of record according to the appropriate regulations and sufficiently demonstrates consideration of Plaintiff's medical conditions as a whole. *See Buckwalter*, 5 F.4th at

1326 ("So long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record."). In formulating Plaintiff's RFC, the ALJ provided a thorough and detailed discussion of Plaintiff's medical conditions and treatment dating back to the time just prior to Plaintiff's alleged onset date. (Tr. 31–39.) The ALJ considered the medical records and opinions of Dr. Springer through early 2019, noting that while Plaintiff "complained of PTSD, anxiety, impatience, sleep disturbance, worrying and nightmares[,] . . . the majority of mental status examinations through early 2019 were within normal limits with only some fluctuations in mood between euthymic, anxious, depressed, or angry moods." (Tr. 34.) The ALJ also noted that during this time, Plaintiff was treated with medications and showed improvements in mood and social activity. (Tr. 34.) The ALJ considered Dr. Springer's later treatment of Plaintiff as well. (Tr. 35.) He noted that in late 2021, Plaintiff reported difficulty working due to stress and PTSD, but also that Plaintiff's "mental status examination findings remained within normal limits with the exception of mood fluctuations between euthymic, anxious, irritable, or depressed mood[,]" and that therapy and medication led to symptom improvement. (Tr. 35.) The ALJ specifically considered Plaintiff's impairments causing him to miss work in formulating Plaintiff's RFC and concluded that, while Dr. Springer opined that Plaintiff "would miss more than four days of work per month[,]" he was not persuaded by that opinion because it was not well-supported by Dr. Springer's own records, or by the other evidence of record. (Tr. 37.) Moreover, contrary to Plaintiff's argument,

the ALJ cited to Dr. Springer's medical statement about Plaintiff's alleged inability to work, as well as to Dr. Springer's progress and office treatment notes, and compares that information to the information provided by other medical providers and by Plaintiff himself, to support his conclusion. (Tr. 1674–80, 1617–54, 1655–73.)

The ALJ's consideration of the supportability of Dr. Springer's opinion is further supported by substantial evidence as Dr. Springer's progress notes from her initial evaluation of Plaintiff on November 12, 2015 show that Plaintiff's mental status was within normal limits. (Tr. 1646.) Dr. Springer further assessed Plaintiff to have similar mental status findings at Plaintiff's appointments on November 25, 2015; December 9, 2015; December 23, 2015; January 6, 2016; January 20, 2016; February 4, 2016; February 18, 2016; March 24, 2016; April 7, 2016; May 12, 2016; June 15, 2016; June 29, 2016; July 20, 2016; August 23, 2016; September 14, 2016; October 19, 2016; February 14, 2017; March 16, 2017; April 5, 2017; May 3, 2017; June 7, 2017; July 6, 2017; November 27, 2017; January 8, 2018; September 19, 2018; October 26, 2018; January 16, 2019; and September 2, 2021. (Tr. 1617–45.)

Plaintiff argues that "references to notes of normal mental status examinations, while true, 'hardly establish that Plaintiff does not suffer from debilitating mental illness.'" (Dkt. 15 at 12–13) (citing *Valadez v. Comm'r of Soc. Sec.*, No. 6:22-cv-149-MSP, 2023 WL 239997, at *6 (M.D. Fla. Jan. 18, 2023)). *Valadez* involved a claimant with major depressive disorder with psychosis, and the court pointed out that "[c]hronic mental disorders are characterized by 'unpredictable fluctuation of their symptoms, and thus it is not surprising that even a highly unstable patient will have

good days or possibly good months" such that "a snapshot of any single moment says little about [a person's] overall condition[.]" *Valadez*, 2023 WL 239997, at *9 (citing *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1106 (11th Cir. 2021)).  However, both *Valadez* and *Simon* applied the treating physician rule and involved applications for benefits before the SSA's new regulations took effect.  *See Glover v. Comm'r, Soc. Sec. Admin.*, No. 22-10497, 2022 WL 17826364, at *3 n.1 (11th Cir. Dec. 21, 2022) ("Glover's reliance on *Simon* is misplaced. In *Simon*, this Court applied 20 C.F.R. § 404.1527(c)(2)'s treating physician rule because the claimant's application was filed in March 2015.").  Further, every progress note completed by Dr. Singer either indicated that Plaintiff's mental status was normal or left that question unanswered.  (Tr. 1617–45.)  Plaintiff also argues that Dr. Singer's opinion contemplates that Plaintiff's symptoms worsened when he returned to work.  (Dkt. 15 at 13.)  While Dr. Singer did indicate in a progress note that Plaintiff "couldn't manage stress" when he "attempted to maintain employment at the V.A.[,]" that same progress note did not indicate that Plaintiff's mental status was outside normal limits.  (Tr. 1618.)

The ALJ also concluded that Dr. Springer's findings regarding Plaintiff's inability to work were inconsistent with other medical evidence and with Plaintiff's own reported abilities.  (Tr. 38.)  With respect to other medical evidence, the ALJ noted that Dr. Springer's opinion conflicts with "primary care notes showing the claimant's reports that he had essentially no mental health symptoms, repeatedly had negative depression screenings, and possessed normal mood, affect, and orientation during examinations." (Tr. 37–38.)  With respect to Plaintiff's own reported abilities,

the ALJ found that Dr. Springer's conclusions that Plaintiff was completely unable to work were contradicted by Plaintiff's assertions that he volunteered with the Shriners, talked to family and friends two to three times a week, and participated in social groups. (Tr. 372–73.) Plaintiff also indicated that he went outside two or three times a week, was capable of shopping and handling money, that he "[did] not have a problem" paying attention, he gets along with authority figures, and follows written and spoken instructions well. (Tr. 372–74.)

Accordingly, the ALJ properly considered the consistency and supportability of Dr. Springer's opinions pursuant to the applicable regulations and the ALJ's decision was supported by substantial evidence in the record and demonstrates consideration of Plaintiff's medical condition as a whole. To the extent Plaintiff identifies other evidence in the record that he contends bolsters Dr. Singer's opinions, the court cannot reweigh the evidence or substitute its judgment for that of the ALJ. *Bloodsworth*, 703 F.2d at 1239 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."); *see Miles*, 84 F.3d at 1400 ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

### B. Assessment of Shoulder Impairment

Plaintiff next argues that the ALJ's assessment of his shoulder impairment is not supported by the record. (Dkt. 15 at 15.) Specifically, Plaintiff first argues that objective and subjective evidence shows that Plaintiff has a limited ability to reach, but the three jobs that the ALJ concluded Plaintiff could perform all involve reaching. (*Id.*

at 21.) Plaintiff claims that, in formulating his RFC, the ALJ engaged in a "selective analysis of the extent of Plaintiff's shoulder treatment, leaving out his persistent complaints of worsening shoulder pain and multiple steroid injections[.]" (*Id.* at 22) (footnotes omitted).

Upon consideration, the court finds that the ALJ properly considered Plaintiff's shoulder impairment, including his subjective complaints of pain, in formulating his RFC. *See* (Tr. 32 ("Physically, the claimant testified that he has right shoulder pain that limits his ability to reach, lift, and carry and low back pain with sciatica that limits his ability to sit [].").) The ALJ's decision reflected consideration of the development of Plaintiff's symptoms, including his shoulder issues, from the alleged onset date in June 2015 all the way through November 2021. (Tr. 32 (". . . treatment notes a few months prior to the alleged onset date of June 30, 2015, confirm that the claimant reported orthopedic issues affecting his shoulders, knees, and back and imaging confirmed 'mild' degenerative arthritis of the bilateral shoulders[.]"); Tr. 32 ("A few months after the alleged onset date, in September 2015, . . . the claimant . . . confirmed that his 'general overall feeling/health' was 'very good' and denied all other symptoms. Moreover, he demonstrated entirely unremarkable function on physical examination with intact musculoskeletal and neurologic function, including normal mobility, balance, gait, and stance."); Tr. 32 ("Thereafter, through the end of 2015 and into 2017, the claimant often reported that his general health and overall feeling was 'very good.' Physical examination findings also generally remained within normal limits."); Tr. 33 ("Through mid-2020, the claimant did not report any significant

persistent back or joint pain and physical examination findings remained unremarkable other than isolated, acute issues with generally intact mobility, strength, sensation, motor function, balance, gait, and stance."); Tr. 33 ("Subsequently, the claimant also complained of right shoulder pain, especially when raising his arm above shoulder level, as well as rare back and neck pain.  Examinations showed variable modest abnormalities, like paraspinal hypertonicity, tenderness in the sacroiliac (SI) joint, and reduced spinal range of motion.  Imaging also confirmed mild to moderate right shoulder arthritis and inflammation, as well as chronic tendinitis. The claimant then underwent arthroscopic rotator cuff debridement and repair in November 2021 with good immediate postoperative symptom and range of motion improvement.") (citations omitted).)  The ALJ then concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 32).

Plaintiff cites to several portions of the transcript which, according to Plaintiff, show his "worsening shoulder pain" and which the ALJ allegedly left out of his analysis.  (Dkt. 15 at 22.)  However, many of the portions of the record cited by Plaintiff are consistent with the ALJ's findings, and some show that Plaintiff's shoulder pain was improving. *See* (Tr. 1710 ("Pt [] continues to display improving R shoulder PROM and AAROM in all directions; there is improving fluidity of motion in all directions as well."); Tr. 1744 ("[H]e states that he's not having any pain from

his shoulder surgery . . ."); Tr. 1799 ("Shoulder is a little better.  Still having trouble with the one reaching OH.  Can still do it but can only get about 75% of the way up.  Alot better with day to day function.")).  The Eleventh Circuit has held that mild treatment and notes that patient "appeared to be well at her appointments" constitute substantial evidence to support an ALJ's RFC determination.  *See Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017).

Finally, Plaintiff argues that the ALJ failed to consider his "stellar 31-year old work history, including 22 years of active duty in the U.S. Army with multiple combat missions."  (Dkt. 15 at 23.)  In considering Plaintiff's subjective symptoms, including pain, the ALJ was required to consider information about Plaintiff's prior work.  20 C.F.R. §§ 404.1529(c), 416.929(c).  Here, the ALJ expressly considered "the claimant's age, education, *work experience*, and residual functional capacity[.]"  (Tr. 41) (emphasis added).  Moreover, as discussed above, the ALJ engaged in a thorough review and discussion of all available subjective and objective evidence before formulating Plaintiff's RFC and determining that he was not disabled.  That Plaintiff's lengthy work history increases his credibility does not require remand.  *See Evans-Sweny v. Comm'r of Soc. Sec.*, No: 2:18-cv-56-FtM-DNF, 2019 WL 949302, at *7 (M.D. Fla. Feb. 27, 2019) ("While Plaintiff is correct that an excellent work history may enhance a claimant's credibility, it does not necessitate remand in this case where the ALJ based her credibility finding on a careful analysis of the medical record and Plaintiff has failed to show the credibility finding was otherwise erroneous.").  The ALJ properly

considered Plaintiff's shoulder impairment and the decision was supported by substantial evidence in the record.

## CONCLUSION

Accordingly:

1. The decision of the Commissioner is **AFFIRMED.**

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on October 26, 2023.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record